30240. RALPH *v.* GREAT AMERICAN INDEMNITY CO. *et al.*

DECIDED NOVEMBER 12, 1943.

*Curry & Curry,* for plaintiff.
*Cumming, Harper & Nixon, T. Elton Drake,* for defendants.

SUTTON, J.   Mrs. Henry C. Ralph filed a claim for compensation with the Industrial Board of Georgia (before the name of the board was changed to State Board of Workmen's Compensation), on account of the death of her husband, Henry Clinton Ralph, who was an employee of Castleberry's Food Company at the time of his death.   The Great American Indemnity Company was the insurance carrier for the employer.   She contended that the death of her husband resulted from injuries arising out of and in the course of his employment.   The employer and the insurance carrier denied that his death arose out of and in the course of his employment; and this was the sole issue for determination.

The deceased had been employed by Castleberry's Food Company as night watchman at its plant for several years.   He lived across the street from the plant in a house owned by the claimant and in the front of which was located a grocery store.   The plant was surrounded by a wire fence and illuminated at night by flood lights which were turned on at switches located on three telephone poles located inside the fence.   Said employee usually went to the plant about dark, which was about 6:30 p. m. at the time of the year the accident occurred, and turned on the lights, and would then return home.   After eating his supper, he would return to the plant, usually between 9 and 10 p. m., and officially go on duty by punching in at the time clock.   He was required to be on duty in the plant six hours each night, but he could stagger the hours any way that suited him.   He was paid for the time he worked as represented by the time cards.   His home was across the street from the plant, and from his front porch he had a clear view of the main gate and of a portion of the buildings.   Everybody around the plant knew he was the night watchman; and when he was at home, he sat on the front porch, and if anyone went to the gate, he would investigate and ascertain his business.   He had general supervision of the plant on Sundays and holidays, and when people were not there working.   He had a key to the gate, and the man who cleaned up the offices on Sunday mornings had to see him to get the key. He customarily punched in at the time clock between 9 and 10 o'clock each night, and would check out several times during the night.   He usually checked out between midnight and 1 a. m. to go and get something to eat, and went off duty when he had worked six hours.

The accident which caused his death occurred on Sunday. That afternoon about 6 or 6:30 he crossed the street from his home and turned on the lights at the plant. His supper was usually prepared for him around 8 o'clock; and on the day of the accident, his wife had his supper ready when she heard a noise in the street in front of the house, and upon investigation she found that her husband had been struck and injured by an automobile, which caused his death a few minutes later. The driver of the automobile had not been discovered. It was not shown what the employee did, nor where he was between 6:30, when he turned the lights on at the plant, and 8, when he was struck by the automobile in the street in front of his house; but it was shown by his time card that he had not checked in at the time clock on the night he was injured.

The single director found that the accident which caused the death of the claimant's husband did not arise out of and in the course of his employment, and denied compensation; and this was approved by a majority of the full board. On appeal the superior court affirmed the award denying compensation, and the exception here is to that judgment.

The Industrial Board found as a matter of fact, and ruled as a matter of law, that the accident resulting in the death of the claimant's husband did not arise out of and in the course of his employment. The claimant contends that this finding is not supported by the evidence; that the evidence demanded a finding that the injury arose out of and in the course of her deceased husband's employment. "An injury arises 'in the course of the employment' when it occurs within the period of the employment, at a place where the employee reasonably may be in the performance of his duties, and while he is fulfilling those duties or engaged in doing something incidental thereto. An accident arises 'out of' the employment when it arises because of it, as when the employment is a contributing cause. The injury must not only arise out of but also in the course of employment, neither alone being sufficient." *Maryland Casualty Co.* v. *Brown,* 48 *Ga. App.* 822 (3) (173 S. E. 925). The burden of showing that the accident arose out of and in the course of the employment was upon the claimant. *Banks* v. *Ellijay Lumber Co.,* 59 *Ga. App.* 270 (2) (200 S. E. 480); *Travelers Insurance Co.* v. *Faulkner,* 63 *Ga. App.* 438 (11 S. E. 2d, 367). If there is any competent evidence to support the

award, it is binding on the reviewing court. *American Mutual Liability Insurance Co.* v. *Brackin,* 68 *Ga. App.* 256 (1) (23 S. E. 2d, 505); *Bituminous Casualty Corporation* v. *Jackson,* 68 *Ga. App.* 447 (1) (23 S. E. 2d, 191). The evidence was that the employee left his home about 6:30 p. m. and went to the plant and turned on the lights; and that about 8 p. m. he was struck by an automobile while in the street in front of his home where he was going for the purpose of eating supper. The injuries were not received on the premises of the employer, and it was not shown where the employee had been, nor what he had been doing between 6:30 p. m., when he turned on the lights at the plant, and 8 p. m., when he was struck and killed by an automobile in the street in front of his home. The injury occurred about one and a half hours before he customarily went on duty by punching in at the time clock in the plant. There was evidence that the deceased employee had general supervision of the plant on Sundays and holidays, and when no one was working there, and that it was his custom to watch the plant from his front porch during the day time. He was struck in the street while on his way home to eat supper. "His preparation for lunch and his eating lunch was his individual affair. It was not a part of his employer's work." *Ocean Accident and Guarantee Cor.* v. *Farr,* 180 *Ga.* 266 (178 S. E. 728). "While he was 'off the job' he can not be said to be 'on the job' because subject to special call." *Welsh* v. *Ætna Casualty & Surety Co.,* 61 *Ga. App.* 636 (7 S. E. 2d, 85). See also: *United States Casualty Co.* v. *Scott,* 51 *Ga. App.* 115 (2) (179 S. E. 640). The finding of the Industrial Board was not without evidence to support it, and in view of the law applicable in such cases (*Independence Indemnity Co.* v. *Sprayberry,* 171 *Ga.* 565, 156 S. E. 230; *Thompson-Starrett Co.* v. *Johnson,* 174 *Ga.* 656, 163 S. E. 745), the superior court did not err in affirming the award denying compensation to the claimant.

*Judgment affirmed. Stephens, P. J., and Felton, J., concur.*